IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUSTIN KEFFER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-18-828-STE |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

I.  **PROCEDURAL BACKGROUND**

This case concerns a closed period of disability from November 5, 2015 through January 1, 2017—the alleged disability having occurred as a result of Plaintiff being involved, as a pedestrian, in a motor vehicle accident.

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-21). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

In determining whether Plaintiff was disabled during the period at issue, the ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that between November 5, 2015 and January 1, 2017, Plaintiff had not engaged in substantial gainful activity. (TR. 12). At step two, the ALJ determined that between November 5, 2015 and January 1, 2017, Mr. Keffer had the following severe impairments: traumatic brain injury (TBI); cerebral trauma; right clavicle fracture; bilateral carotid artery pseudoaneurysms, status-post stenting for left carotid stenosis; status-post open reduction internal fixation (ORIF) to the right clavicle; left open tibia-fibula fracture; status-post subdural evacuating port-system (SEPS) (removed January 2016); and deep vein thrombosis. (TR. 12). At step three, the ALJ found that between November 5, 2015 and January 1, 2017, Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 16).

At step four, the ALJ found that:

beginning November 4, 2016 (i.e., eleven months and thirty days after the claimant's amended alleged onset date of disability of November 5, 2015),

2

and ending January 1, 2017, the claimant had the residual functional capacity to perform the full range of light exertion work as defined in 20 CFR 404.1527(b).

(TR. 17). The ALJ also "relie[d] on SSA policy and ma[de] no findings concerning the claimant's past relevant work." (TR. 20).

Because the ALJ concluded that Mr. Keffer could perform the full range of light work between November 4, 2016 and January 1, 2017, he proceeded to assess the issue of disability utilizing the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"). *See* Social Security Ruling 83-11, Titles II And XVI: Capability to Do Other Work--the Exertionally Based Medical-Vocational Rules Met, 1983 WL 31252 at (1983) (allowing application of the Grids when the claimant can perform all of the exertional demand at a given level of exertion, i.e.—a full range of "light" work).

Ultimately, the ALJ concluded that Plaintiff was not disabled, based on application of Rule 202.20. (TR. 20-21). The ALJ also made an alternative finding that even if Plaintiff had been limited to sedentary work between November 4, 2016 and January 1, 2017, he would still be found not disabled based on application of Grid Rule 201.27. (TR. 20).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUES PRESENTED

On appeal, Mr. Keefer alleges errors regarding the ALJ's: (1) duty to conduct a proper inquiry at the administrative hearing and (2) findings at steps four and five.

## V. THE ALJ'S INQUIRY AT THE HEARING

Plaintiff alleges that "the ALJ made no attempt to inform himself about anything from the claimant's point of view to inform himself about the claimant's version of the facts of his case." (ECF No. 13:3). Regarding a specific line of inquiry, Mr. Keffer states: "other than case identifiers, the ALJ asked no questions regarding any limitations that might still remain after being struck by a car in the [motor vehicle accident]." (ECF No. 13:3). The Court rejects Plaintiff's allegation of error.

### A. The ALJ's Duty of Inquiry

"[A]dministrative disability hearings are nonadversarial ... and the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Wall v. Astrue*, 561 F.3d 1048, 1062–63 (10th Cir. 2009) (internal quotation marks and citation omitted). This duty pertains even if the claimant is represented by counsel. *Id.* at 1063. But an ALJ's duty to develop the record is *not* unqualified. *Id.* The duty is one of inquiry, to inform the ALJ of the relevant facts and to hear the claimant's version of those facts. *Younger on Behalf of Younger v. Shalala*, 30

F.3d 1265, 1268 (10th Cir. 1994). In assessing the duty of inquiry, the Court must determine whether, at the hearing, the ALJ asked sufficient questions to ascertain: (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities. *Musgrave v. Sullivan,* 966 F.2d 1371, 1374–1375 (10th Cir. 1992).

### B. The ALJ Properly Fulfilled His Duty of Inquiry

At the hearing, the ALJ asked Mr. Keffer:

- If he had retained any memory of the accident;

- If he had "residual problems … as a result of the accident";

- If he believed he had fully recovered from the accident;

- About specific problems with his right clavicle that was injured in the accident; and

- About his emotions and ability to sleep since the accident.

(TR. 38-41). These questions reflect that the ALJ fulfilled his duty of inquiry at the hearing. Accordingly, the Court rejects this allegation of error.

### VI. STEPS FOUR AND FIVE

Next, Plaintiff alleges that the ALJ "made his own vocational findings at Steps 4 and 5, despite the presence of a Vocational Expert at the hearing." (ECF No. 13:5). The Court concludes that no reversible error occurred.

## A. The ALJ's Duties at Steps Four and Five

At step four of the disability determination, the ALJ must complete three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), ... and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work.... In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.... At each of these phases, the ALJ must make specific findings.

*Bowman v. Astrue,* 511 F.3d 1270, 1272 (10th Cir. 2008) (citation omitted). Findings at each phase of step four must be supported by substantial evidence. *See Watkins v. Barnhart,* 350 F.3d 1297, 1299 (10th Cir. 2003).

At step five, the burden of proof shifts to the Commissioner "to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy, given h[is] age, education, and work experience." *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (alterations in original). One of the ways the Commissioner can meet this burden is through use of "the Grids." *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). The Grids are matrices of the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Daniels*, 154 F.3d at 1132 (citing *Heckler v. Campbell,* 461 U.S. 458, 461–62 (1983). The Grids may provide a shortcut in certain circumstances to determine whether a claimant can perform other work by obviating the need for a VE's testimony. *See Trimiar v. Sullivan,* 966 F.2d 1326, 1332 (10th Cir. 1992).

Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (*i.e.,* sedentary, light, medium, heavy, and very heavy). 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the existence of jobs in the national economy for that claimant is established, and the rule directs a conclusion as to whether the individual is or is not disabled." *Daniels*, 154 F.3d at 1132 (citation and internal quotation marks omitted). However, the Commissioner may not apply the Grids "conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule." *Daniels,* 154 F.3d at 1132.

### B. No Reversible Error at Steps Four and Five

Mr. Keffer alleges two errors at step four. First, Plaintiff alleges the ALJ erred at phase two of step four when he cited 20 C.F.R. § 404.1565 and stated that he "relie[d] on SSA policy and ma[de] no findings concerning the claimant's past relevant work." (TR. 20). Mr. Keffer argues that: (1) the ALJ failed to explain his reliance on § 404.1565 and (2) the statute did not provide the ALJ with the authority to essentially bypass phase two. (ECF No. 13:5-6).

In response, the Commissioner argues that the ALJ's failure to make findings at phase two of step four was permissible under 20 C.F.R. § 404.1520(h) which "set[s] forth an expedited step-four process to be used when there is not enough evidence to make a finding about a claimant's past relevant work." (ECF No. 17:12). Indeed, § 404.1520(h)

states that if the ALJ "do[es] not have sufficient information about [the claimant's] past relevant work to make a finding at the fourth step, [the ALJ] may proceed to the fifth step of the sequential evaluation process." 20 C.F.R. § 404.1520(h). But the problem with the Commissioner's argument is that the ALJ himself neither relied on § 404.1520(h), nor stated that he did not have sufficient information about Plaintiff's past relevant work which would allow him to use the expedited process. Accordingly, the Court rejects Defendant's argument because the Court is not permitted to supply *post hoc* rationales to uphold the Commissioner's decision *See Haga v. Astrue,* 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "substitute [its] judgment for that of the Commissioner.").

Mr. Keffer also argues that "all of the vocational analysis occur[ed] in the ALJ's head" and that "the ALJ erred in not utilizing the VE at the hearing" to glean information regarding Plaintiff's past relevant work. (ECF No. 13:6, 7). Plaintiff believes that the ALJ chose to not develop Plaintiff's past relevant work because prior to the hearing, the ALJ "had already decided to deny Mr. Keffer at the GRID level[.]" (ECF No. 13:7).

The Court concludes that the ALJ indeed committed legal error at step four by failing to make findings regarding Plaintiff's past relevant work without proper explanation. However, the Court deems the error harmless in light of the ALJ's alternate findings at step five.

At step four, the ALJ concluded that Mr. Keffer retained the RFC to perform a full range of light work. (TR. 17). At step five, the ALJ made additional findings regarding each of the remaining areas outlined in the Grids—Plaintiff's age, education, and transferability of work skills. (TR. 20). Although not altogether clear, Mr. Keffer's main point of error seems to be the ALJ's failure to utilize a VE to develop information regarding Plaintiff's past relevant work at both steps four and five. (ECF No. 13:5-7). As stated, the Court agrees that the ALJ erred at step four by failing to develop information and make proper findings regarding Plaintiff's past relevant work. *See supra*. But the Court deems the step four error harmless based on the ALJ's use of the Grids at step five, especially in light of the fact that Mr. Keffer does not specifically challenge any of the ALJ's findings concerning Plaintiff's RFC, age, education, and transferability of work skills. *See Polson v. Astrue*, 508 F. App'x 705, 709 (10th Cir. 2013) ("Because the ALJ found that [the plaintiff] had the RFC to perform a full range of sedentary work, he relied upon the Grids only to make his step-five determination, without need of consultation with the VE."); *Best-Willie v. Colvin*, 514 F. App'x 728, 738 (10th Cir. 2013) ("any legal error at step four is harmless in view of the ALJ's alternate finding at step five"); *Martinez v. Astrue*, 316 F. App'x 819, 824 (10th Cir. 2009) "([T]he ALJ's failure to make explicit findings on the record regarding the physical and mental demands of Mrs. Martinez's past relevant work … was "harmless in view of … the ALJ's alternate finding at step five" which was deemed proper). Because the step five findings were proper, any error which occurred at step four is deemed harmless and the Court affirms the Commissioner's decision.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on April 2, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE